# In the United States Court of Federal Claims

No. 09-771C
(Filed: August 3, 2010)*
*Opinion Originally Filed Under Seal on July 13, 2010

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | * |
| | * |
| K-LAK CORPORATION, | * |
| | *  Motion to Dismiss; Bid Protest |
| Plaintiff, | *  Jurisdiction, 28 U.S.C. § 1491(b)(1); |
| | *  Jurisdiction Over CDA Claims, 28 |
| v. | *  USC § 1491(a)(2); Standing; Removal |
| | *  from Small Business Program, 8(a); |
| THE UNITED STATES, | *  GSA Schedule. |
| | * |
| Defendant. | * |
| | * |
| * * * * * * * * * * * * * * * * * | * |

*James S. Benton,* Falls Church, VA, for plaintiff.

*Antonia Ramos Soares,* U.S. Department of Justice, Washington, DC, with whom were *Tony West,* Assistant Attorney General, and *Jeanne E. Davidson,* Director, for defendant.

**O P I N I O N**

**FIRESTONE**, *Judge*.

Pending before the court is the motion filed by the defendant ("government") to dismiss this action brought pursuant to the court's bid protest jurisdiction as governed by 28 U.S.C. § 1491(b)(1) (2006).  For the reasons set forth below, the motion is **DENIED**.

**BACKGROUND**

The plaintiff, K-LAK Corp. ("K-LAK") was an incumbent contractor providing credit reports at a cost of $3.80 each to the United States Department of the Air Force

("Air Force") under a one-year contract (No. FA 3089-08-P-0018, effective October 1, 2007 through September 30, 2008) awarded as a direct sole-source contract under the Small Business Association ("SBA") 8(a) Business Development Program ("8(a) program"), 15 U.S.C. § 637(a)(1) (2006).[1]  During the period of K-LAK's performance, the Air Force learned that a larger business, Equifax Information Services ("Equifax"), was providing similar credit reports to the Army under the General Services Administration ("GSA") Federal Supply Schedule ("FSS") for $1.50 each.[2]  On August 14, 2008, the Air Force, after negotiating with the plaintiff to bring K-LAK's price per credit report down to a price that was comparable to Equifax's price, advised the SBA and

---

[1] The 8(a) program is designed to give small businesses owned and controlled by socially and economically disadvantaged individuals access to the federal procurement market. See 15 U.S.C. § 631(f)(2). Here, the Department of Defense ("DOD") entered into a Partnership Agreement with the SBA that allowed the Air Force to directly enter into contracts, either on a sole source or competitive basis, with 8(a) firms. While the SBA delegated the authority to sign contracts on its behalf to the DOD, the SBA remained the prime contractor on all 8(a) contracts, with the 8(a) program participating business as the SBA subcontractor.

[2] The FSS (also known as the "Multiple Award Schedule" or "GSA Schedule") program provides federal agencies a simplified process for obtaining commonly used commercial supplies and services. See FAR 8.4, 48 C.F.R. § 8.4 (2009). Through this program, GSA negotiates and administers long-term, government-wide contracts, ensuring at the time of negotiation that these contract prices are fair and reasonable using FAR 15.406-3 for guidance. Robert J. Sherry et al., Competition Requirements in General Services Administration Schedule Contracts, 27 Pub. Cont. L. J. 467, 470, 475 (2008). Government agencies may place orders against these contracts using procedures set forth in Federal Acquisition Regulation ("FAR") 8.4, which provides procurement procedures by which agencies review vendors' FSS contracts and place orders directly with the vendors that can provide goods or services representing the best value and best fit for the agencies' needs. Id at 470-71. Agencies may also issue blanket purchase agreements against FSS contracts to fill recurring requirements for products or services. Id. at 473. The competition procedures in FAR Parts 13, 14, 15 and the Small Business Program rules in FAR Part 19 do not apply to orders placed against and fully within the scope of existing FSS contracts.

K-LAK that, as authorized by Federal Acquisition Regulation ("FAR") 17.207(c)(2) and (d)(2),[3] it had decided not to exercise the option to extend its contract because K-LAK was "unable to provide the product at a fair market price." (Compl. Ex. 1.) K-LAK protested the Air Force's decision not to procure from a small business to the SBA. (Administrative Record ("AR") 392.) The Air Force nonetheless decided not to extended K-LAK's contract under the option clauses either explicit in or incorporated by reference into its contract with the Air Force. Thus K-LAK's contract expired at the end of September 2008. Finding no other 8(a) program businesses that met a fair market price as determined by the Air Force's research conducted pursuant to FAR 17.207, the Air Force cancelled its requirement internally with the SBA. (AR 323.) The SBA in December 2008 formally

---

[3] FAR 17.207 provides in relevant part as follows:

(c) The contracting officer may exercise options only after determining that—
   . . .
   (3) <u>The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors (see paragraphs (d) and (e) of this section) considered</u>;
   . . .
(d) The contracting officer, after considering price and other factors, shall make the determination on the basis of one of the following:
   . . .
   (2) <u>An informal analysis of prices or an examination of the market indicates that the option price is better than prices available in the market or that the option is the more advantageous offer</u>.
   . . .
(e) The determination of other factors under paragraph (c)(3) of this section—
   (1) Should take into account the Government's need for continuity of operations and potential costs of disrupting operations; and
   (2) May consider the effect on small business.

FAR 17.207, 48 C.F.R. § 17.207 (2009) (emphasis added).

advised the Air Force that the requirement for credit reporting services could not be withdrawn from the 8(a) program based upon the information the Air Force had provided, on the grounds that the SBA may release a requirement from the 8(a) program "only in very limited circumstances" and none of the information provided met the criteria of 13 C.F.R. § 124.504(e)."[4] (Compl. Ex. 2.) The SBA did not take any further appeal within the Air Force.

---

[4]That regulation provides:

> Release for non-8(a) competition. In limited instances, SBA may decline to accept the offer of a follow-on or renewal 8(a) acquisition to give a concern previously awarded the contract that is leaving or has left the 8(a) [Business Development ("BD")] program the opportunity to compete for the requirement outside the 8(a) BD program.
>     (1) SBA will consider release only where:
>         (i) The procurement awarded through the 8(a) BD program is being or was performed by either a Participant whose program term will expire prior to contract completion, or, by a former Participant whose program term expired within one year of the date of the offering letter;
>         (ii) The concern requests in writing that SBA decline to accept the offer prior to SBA's acceptance of the requirement for award as an 8(a) contract; and
>         (iii) The concern qualifies as a small business for the requirement now offered to the 8(a) BD program.
>     (2) In considering release, SBA will balance the importance of the requirement to the concern's business development needs against the business development needs of other Participants that are qualified to perform the requirement. This determination will include consideration of whether rejection of the requirement would seriously reduce the pool of similar types of contracts available for award as 8(a) contracts. SBA will seek the views of the procuring activity.
>     (3) If SBA declines to accept the offer and releases the requirement, it will recommend to the procuring activity that the requirement be procured as a small business or, if authorized, [a Small Disadvantaged Business] set-aside.

13 C.F.R. § 124.504(e).

More than one year after its contract expired, the plaintiff filed the present complaint on November 10, 2009. The complaint contains three claims. The plaintiff charges: (1) that the Air Force illegally and in defiance of the SBA's December 2008 ruling withdrew the requirement for credit reporting services from the SBA 8(a) program in violation of 13 C.F.R. § 124.504(e); (2) the Air Force illegally awarded a sole-source contract to Equifax in violation of FAR 6.2 and 6.3; and (3) the Air Force's fair market price determination violated 8(a) program regulations set forth in 13 C.F.R. § 124.504(a)(2) because it looked to prices charged by commercial bidders that were not 8(a) eligible bidders. (Compl. ¶¶ 25-38.) The plaintiff asked the court to suspend the Air Force's acquisition of credit reports from Equifax and to "enjoin the Air Force from employing the funds obligated to the performance of any contract awarded to Equifax for the credit reporting services to any entity other than K-LAK." (Compl. 9-10.)

Based on the allegations made in the complaint, the government moved to dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). In its motion, the government argues that to the extent the plaintiff's claims relate to the Air Force's decision not to extend K-LAK's contract by exercising the option, these claims have to be dismissed on the grounds that plaintiff never filed a claim with the contracting officer as required by the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613 (2006). The government argues that the plaintiff can not avoid the exhaustion requirements of the CDA by relying upon the court's

5

bid protest jurisdiction under 28 U.S.C. § 1491(b)(1).  In the alternative, the government argues that to the extent the plaintiff's claims may be heard under the court's bid protest jurisdiction, the plaintiff lacks standing to bring a claim because the plaintiff is not listed on the FSS and is thus not an "interested party" eligible to challenge an award under as required by Section 1491(b)(1).

In response to the government's motion, the plaintiff clarified that it does not seek review of the Air Force's decision not to exercise its contract option, but instead seeks review only of the Air Force's procurement decision to exit the small business program and instead purchase credit reports from Equifax.  The plaintiff further argues that it has standing to bring its claim because only an eligible small business can challenge the Air Force's decision to leave the 8(a) program.

## STANDARD OF REVIEW

The standard for ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is well-settled.  The plaintiff bears the burden of establishing subject matter jurisdiction, Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  Because jurisdiction is a threshold matter, a case can proceed no further if a court lacks jurisdiction to hear it.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the

court must dismiss the complaint in its entirety." (citation omitted)); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998). See generally John R. Sand & Gravel v. United States, 552 U.S. 130 (2008). It is well-settled that when the court considers a motion to dismiss for lack of subject matter jurisdiction, it may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

## DISCUSSION

**A.     Jurisdiction**

Under Section 1491(a)(2) of the Tucker Act, the Court of Federal Claims has jurisdiction over claims arising under the CDA:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2).

The Court of Federal Claims also has jurisdiction under Section 1491(b) of the Tucker Act to hear claims involving objections to certain procurement decisions, namely:

> . . . an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

Id. § 1491(b)(1).

The government argues that the plaintiff's complaint can be fairly read as a challenge to the Air Force's decision not to exercise its option to extend the K-LAK contract, and that the plaintiff's claims must be dismissed because the plaintiff has not complied with the prerequisites in the CDA, 41 U.S.C. §§ 601-613. In particular, the plaintiff has not filed a claim with the contracting officer. The government argues that contractors cannot bypass the CDA claims process by couching their claims as objections to a "procurement" decision under Section 1491(b)(1). Here, the government argues, the "procurement" decision the plaintiff challenges concerns the decision not to use a small business contract. The government contends that the plaintiff cannot obtain the relief it seeks by challenging the Air Force's decision to obtain credit reports using the GSA FSS.

In response, the plaintiff argues that the government has mischaracterized its claims. The plaintiff argues that it is challenging the government's violation of various small business-related statutes and regulations arising from the Air Force's decision to procure credit reports from Equifax via the FSS. The plaintiff argues that its claims are not claims regarding contract administration, but claims regarding violations of statutes and regulations in connection with the procurement and are thus within the court's bid protest jurisdiction under 28 U.S.C. § 1491(b)(1).

The court agrees with the plaintiff in that to the extent its claims relate to the Air Force's decision to exit the small business 8(a) program and instead procure credit reports using the GSA Schedule, this court has jurisdiction to hear the case. In CCL, Inc. v.

United States, 39 Fed. Cl. 780 (1997), the court considered a claim similar to the plaintiff's claim in this case under its bid protest jurisdiction. In CCL, the government declined to renew the plaintiff's contract to provide computer maintenance services and instead expanded the scope of another company's contract to cover the additional work previously performed by the plaintiff. Id. The plaintiff claimed that the agency violated the Competition in Contracting Act, by expanding the scope of another contract without opening up the additional work to competitive bidding. The government moved to dismiss the case, arguing, as here, that the plaintiff's claims were essentially a dispute regarding the administration of its contract, rather than a bid protest. The court rejected the government's reading of the complaint and held that the "procurement" at issue was not the plaintiff's previous contract, but the new contract being performed by another company. Id. at 788-89. The court held that pursuant to its bid protest jurisdiction, the court can hear:

> . . . both a suit challenging government action which is self-consciously a competitive procurement as well as what [the plaintiff] is claiming here: that [the agency] is procuring goods and services through a process that should have been the subject of competition; and that the failure to compete the procurement is in violation of law.

Id. at 789 (emphasis in original).

The rationale in CCL applies to this case as well. The plaintiff's challenge here is in connection with the Air Force's procurement of credit reports through the GSA schedule rather than through the small business program.

9

In this regard, the plaintiff's challenge to the Air Force's decision to procure credit reports using the GSA schedule is also consistent with the Federal Circuit's broad reading of the term "procurement" in 28 U.S.C. § 1491(b)(1). The Federal Circuit has held that for purposes of determining jurisdiction under Section 1491(b)(1), "procurement" includes "all stages of the process of acquiring property or services, <u>beginning with the process for determining a need for property or services</u> and ending with contract completion and closeout." <u>Distributed Solutions, Inc. v. United States</u>, 539 F.3d 1340, 1345 (Fed. Cir. 2008) (emphasis added) (holding that the court has bid protest jurisdiction over pre-procurement decisions). Similarly, the Federal Circuit has held that as long as a "statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction." <u>RAMCOR Services Group, Inc. v. United States</u>, 185 F.3d 1286, 1289 (Fed. Cir. 1999) (holding that the court has jurisdiction to review objections to an agency's override of an automatic stay following a bid protest filed with the Government Accountability Office). Tested by these standards, the plaintiff's claims here can be fairly read as challenging the Air Force's "procurement" decision to cancel its requirement for credit reports with the SBA under the 8(a) program in favor of procuring credit reports via the FSS.

Finally, the Court of Federal Claims has held in several cases that it has bid protest jurisdiction over challenges to agency procurement decisions involving use of the FSS. In both <u>Idea Int'l, Inc. v. United States</u>, 74 Fed. Cl. 129, 135-36 (2006) and <u>Data Mgmt.</u>

Services Joint Venture v. United States, 78 Fed. Cl. 366, 371 n.4 (2007), the Court of Federal Claims held that while the Federal Acquisition Streamlining Act of 1994 restricted the court's bid protest jurisdiction with regard to certain task and delivery contracts under that Act, there is not a similar restriction on the court's jurisdiction regarding FSS contracts.  See also Robert J. Sherry et al., Competition Requirements in General Services Administration Schedule Contracts, 27 Pub. Cont. L. J. 467, 484-86 (2008).  Similarly, the Government Accountability Office ("GAO") has considered bid protest challenges to procurement decisions involving use of the FSS, including cases similar to the present action.  In In re Information Ventures, Inc., B-291952, 2009 CPD ¶ 101, 2003 WL 21089149 (Comp. Gen. 2003), the GAO examined the merits of a plaintiff's protest challenging an agency decision to cancel a pre-solicitation notice of intent to procure services under a small business set-aside and to instead solicit quotations from the FSS.

In view of the foregoing authorities, the court finds that it has jurisdiction over plaintiff's objections to the Air Force's decision to remove its requirement for credit reports from the 8(a) program and to use the FSS.  Because the court has determined that it has jurisdiction under Section 1491(b)(1) to consider the plaintiff's objections to the Air Forces' procurement decisions to leave the 8(a) program and to procure credit reports through the FSS, this present case is distinguishable from Gov't Technical Servs. v. United States, 90 Fed. Cl. 522 (2009), and other similar cases[5] which hold that a plaintiff cannot

---

[5]The government also cites Alliant Techsystems, 178 F.3d 1260, Cessna Aircraft Co. v. United States, 126 F.3d 1442 (Fed. Cir. 1997), TGI Mgmt. Sys., Inc. v. United States, 78 Fed. Cl.

bypass the CDA process by claiming it is challenging a "procurement" decision when in fact the objection goes to contract administration. In Gov't Technical Services, the court held that the plaintiff's claims that the contracting agency treated it unfairly, resulting in the agency's decision not to exercise an option to extend the plaintiff's contract, were not ripe under the CDA and thus not within the court's bid protest jurisdiction. Gov't Technical Servs., 90 Fed. Cl. 522; see also ABF Freight Sys. Inc. v. United States, 55 Fed. Cl. 392, 397 (2003) (holding that where a plaintiff is a successful bidder, claims related to the administration of its contract are properly brought under the CDA). While more factually complex, Control Data Sys. v. United States likewise involved questions of contract administration related to an existing contract that could not be heard using the court's bid protest jurisdiction. Control Data Sys., 32 Fed. Cl. 520, 524 (1994). These cases are distinguishable because the plaintiff's claims in this case concern procurement decisions that are separate from the procurement decision not to exercise a contract option. The Air Force's procurement decision to remove the procurement of credit reports from the 8(a) program and to instead use the FSS to obtain the credit reports fall within the court's Section 1491(b)(1) jurisdiction.[6]

---

448 (2007), ABF Freight Sys. Inc. v. United States, 55 Fed. Cl. 392 (2003), Control Data Sys. v. United States, 32 Fed. Cl. 520 (1994) for the same proposition.

[6]The court's conclusion regarding jurisdiction does not mean that the injunctive relief the plaintiff seeks is necessarily available under Section 1491(b)(1). The court must distinguish between jurisdiction over the "claim" and the propriety of granting the "relief" requested. See Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993) ("[T]he existence of jurisdiction does not confirm the court's ability to supply relief."); Alliant Techsystems, 178 F.3d at 1271.

The court next turns to the government's argument that K-LAK lacks the standing required to bring its claims under Section 1491(b)(1).

**B.     Standing**

Even while a court may have subject matter jurisdiction over a type of claim generally, a plaintiff must still establish standing in order to invoke the court's jurisdiction. Hoopa Valley Tribe v. United States, 597 F.3d 1278, 1283 (Fed. Cir. 2010).  In the context of the court's bid protest jurisdiction, a plaintiff only has standing if it is an "interested party."  See Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). Interested parties are defined as "<u>actual or prospective bidders</u> or offerors whose <u>direct economic interest</u> would be affected by the award of the contract or by failure to award the contract." Id. (citing 31 U.S.C. § 3551(2)(A) (2006)) (emphasis added).

The government, ignoring the Air Force's decision to use the FSS to procure credit reports, argues that the plaintiff is not an actual or prospective bidder because the plaintiff was the awardee of the only "contract" to obtain credit reports–the contract that expired in September 2008.  Similarly, the government argues that because the plaintiff was a successful bidder, it cannot establish the prejudice required for standing.  In response, the plaintiff again points to the government's erroneous characterization of its claims as objections to the Air Force's decision not to exercise the option in its contract.  K-LAK argues that it has standing to challenge the Air Force's decision to procure credit reports via the FSS because the decision to procure from the FSS and not from a small business affected its direct economic interest.

Given the court's ruling regarding the nature of K-LAK's claims, the court must reject the government's argument that K-LAK lacks standing because it was a "successful bidder," rather than an "actual or prospective bidder." As discussed above, the plaintiff's claims are related not to the contract it held, but to the decision to procure credit reports via the FSS, rather than from an 8(a) contractor such as the plaintiff. The plaintiff is arguing that it was an actual or prospective bidder for the work now performed by Equifax and that it was harmed by the government's actions leading up to that award. For this reason, the plaintiff has established that it has the requisite standing to pursue this claim under the Tucker Act.

The fact that K-LAK is not a contractor on the GSA schedule is not fatal to its standing. This court addressed the standing of a non-FSS plaintiff to challenge an agency's decision to procure certain commercial items through the FSS in Klinge Corp. v. United States, 83 Fed. Cl. 773 (2008). In Klinge, the court held that although the plaintiff was not a bidder under the FSS task order, it had standing to challenge the cancellation of the prior solicitation, for which it was a bidder, and in this connection the plaintiff had standing to challenge the FSS award because of its link to the prior procurement. Id. at 776 (holding that despite the normal restriction of standing to pre-qualified FSS bidders, "[i]n view of plaintiff's allegation that the decision not to award under the [Request for Proposals] was undertaken in a bad faith effort to direct the contract to [another contractor] . . . plaintiff has standing to that extent to seek an injunction against the FSS

14

task order."); see also Klinge Corp. v. United States, 87 Fed. Cl. 473, 475 (2009) (explaining jurisdictional holding in denial of motion for reconsideration). Like the plaintiff in Klinge, K-LAK was not a FSS bidder. But also like that plaintiff in Klinge, K-LAK has demonstrated injury resulting from the agency's decision to change course in obtaining its procurement of credit reports. Thus the "link" found in Klinge is also present in this case. See Klinge, 83 Fed. Cl. at 774. A contractor with similar standing to K-LAK's was also heard in Information Ventures, in which the Comptroller General, without specifically addressing standing, reached the merits of a plaintiff's contention that an agency improperly cancelled a pre-solicitation notice of intent to procure services under a small business set-aside, opting instead to solicit quotations from the FSS. Info. Ventures, 2003 WL 21089149.

For all of these reasons, the plaintiff has standing as an "interested party" for purposes of the exercise of this court's bid protest jurisdiction and may challenge the Air Force's decision to acquire credit reports via the FSS rather than through an 8(a) procurement, as it had previously.[7]

---

[7] The court notes, however, that to the extent the court decides that the Air Force's decision to procure credit reports via the FSS rather than using an 8(a) procurement was justified, K-LAK, a non-FSS contractor, would lack standing to challenge any particular orders from Equifax or other FSS providers. See Info. Ventures, 2003 WL 21089149 (no statute or regulation required the agency to consider small businesses in lieu of purchasing from the FSS); In re FitNet Purchasing Alliance, B-309911, 2007 CPD ¶ 201, 2007 WL 3257012 (Comp. Gen. 2007) ("Given that the decision was made to procure via the FSS, FitNet, which does not hold an FSS contract, is not an interested party to protest the terms of the solicitation." (internal citation removed)).

## CONCLUSION

Based on the reasons set forth above, the government's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**. The government's response to the plaintiff's Motion for Judgment on the Administrative Record and any cross-motion are due **August 20, 2010**. Additional briefing shall be due in accordance with the Rules of the Court of Federal Claims

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge
