# In the United States Court of Federal Claims

**No. 09-771C**
**(Filed: March 9, 2011)\***
**\*OPINION ORIGINALLY ISSUED UNDER SEAL ON MARCH 3, 2011**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **K-LAK CORPORATION,** | * | |
| | * | **Motion for Judgment on the** |
| **Plaintiff,** | * | **Administrative Record; 28 U.S.C. §** |
| | * | **1491(b)(1); Small Business** |
| **v.** | * | **Development Program, 8(a); Use of** |
| | * | **Federal Supply Schedule.** |
| **THE UNITED STATES,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * | * | |

*Janine S. Benton,* Falls Church, VA, for plaintiff.

*Antonia Ramos Soares,* U.S. Department of Justice, Washington, DC, with whom were *Tony West,* Assistant Attorney General, and *Jeanne E. Davidson,* Director, for defendant.

## O P I N I O N

**FIRESTONE**, *Judge*.

Pending before the court are cross-motions for judgment on the administrative record filed pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). In this action brought under 28 U.S.C. § 1491(b)(1) (2006), the plaintiff challenges the government's September 2008 decision to procure credit reports using the Federal Supply Schedule ("FSS") rather than continue its procurement pursuant to the requirement it had

set aside for small businesses in 2007.  The plaintiff was the small business incumbent

providing credit reports before its contract expired in 2008.  Because nothing in the Small

Business Act, 15 U.S.C. §§ 631-657 (2006) or applicable regulations requires an agency

to retain a requirement in the small business set-aside program if the agency can meet its

needs through the FSS, and because there is no evidence to show that the agency abused

its discretion when it decided to meet its credit report needs using the FSS, the court

determines that the plaintiff's challenge must fail and that the government is entitled to

judgment on the administrative record.

## I.    BACKGROUND

The following facts taken from the administrative record are not in dispute.  The

plaintiff, K-LAK Corp. ("K-LAK"), was an incumbent contractor providing credit reports

at a cost of $3.80 each to the United States Department of the Air Force ("Air Force")

under a one-year contract (No. FA 3089-08-P-0018, effective October 1, 2007 through

September 30, 2008) awarded as a direct sole-source contract under the Small Business

Association ("SBA") 8(a) Business Development Program ("8(a) program" or "8(a) BD

program"), 15 U.S.C. § 637(a)(1).[1]  The contract provided for four one-year option

---

[1]The 8(a) program is designed to give small businesses owned and controlled by socially
and economically disadvantaged individuals access to the federal procurement market.  See 15
U.S.C. § 631(f)(2).  Here, the Department of Defense ("DOD") entered into a Partnership
Agreement with the SBA that allowed the Air Force to directly enter into contracts with 8(a)
firms, either on a sole-source or competitive basis.  While the SBA delegated the authority to
sign contracts on its behalf to the DOD, the SBA remained the prime contractor on all 8(a)
contracts, with the 8(a) program participating business as the SBA subcontractor.  See generally
Mission Critical Solutions v. United States, 91 Fed. Cl. 386 (2010) (including a detailed

periods following the initial one-year contract.  During the period of K-LAK's

performance, the Air Force learned that a larger business, Equifax Information Services

("Equifax"), was providing the same or similar credit reports[2] to the Army under the

General Services Administration ("GSA") FSS for $1.50 each.[3]  The Air Force negotiated

---

discussion of the legislative history of the Small Business Act and its preference programs in
particular).

[2]The plaintiff contends that the reports offered by Equifax were not the same as the
"employment reports" K-LAK had been providing to the Air Force under its sole-source contract.
A review of the record, which includes copies of both the plaintiff's and Equifax's reports,
shows, however, that the ACROFILE 5.0 and ACROFILE Plus 5.0 products offered by Equifax
for $1.50, Administrative Record ("AR") 166-68, 172-75, 185, provide similar information to the
Experian Report offered by K-LAK, AR 179.  Both include the subject's personal information,
the status of the subject's accounts, and information on recent inquiries.  In fact, the Equifax
reports appear to be more detailed than the K-LAK report, offering additional information such
as employment history and credit score.  See AR 166, 172.  There is nothing in the record to
support K-LAK's argument that the reports are dissimilar or that the reports offered by Equifax
do not meet the Air Force's mission requirements.  See AR 157, 320, 445 (noting that the
mission requirements are the "same" and the reports are "similar").  Although K-LAK argues
that Equifax also offered a more expensive report (costing more than $3.50) through the FSS,
there is no evidence to suggest that the Air Force is purchasing that report instead of the $1.50
report included in the record.

[3]The FSS (also known as the "Multiple Award Schedule" or "GSA Schedule") program
provides federal agencies a simplified process for obtaining commonly used commercial supplies
and services.  See Federal Acquisition Regulations ("FAR") 8.4 (2010).  Through this program,
GSA negotiates and administers long-term, government-wide contracts, ensuring at the time of
negotiation that these contract prices are fair and reasonable using FAR 15.406-3 for guidance.
Robert J. Sherry et al., Competition Requirements in General Services Administration Schedule
Contracts, 37 Pub. Cont. L.J. 467, 470, 475 (2008).  Government agencies may place orders
against these contracts using procedures set forth in FAR 8.4, which provides procurement
procedures by which agencies review vendors' FSS contracts and place orders directly with the
vendors that can provide goods or services representing the best value and best fit for the
agencies' needs.  Id at 470-71.  Agencies may also issue blanket purchase agreements against
FSS contracts to fill recurring requirements for products or services.  Id. at 473.  The competition
procedures in FAR Parts 13, 14, and 15 and the Small Business Program rules in FAR Part 19 do
not apply to orders placed against and fully within the scope of existing FSS contracts.  Id. at
474; FAR 8.404(a).  Small businesses are, however, considered for inclusion on the FSS.  See

with the plaintiff to bring K-LAK's price per credit report down to a price that was

comparable to Equifax's price, but K-LAK was unable to bring its price below $3.05 per

credit report.

On August 14, 2008, the Air Force contracting officer sent a memorandum to the

SBA and K-LAK entitled "Withdrawal of Unilateral Offering to Set-Aside under the 8(a)

Program," advising the SBA that, as authorized by FAR 17.207(c)(3) and (d)(2),[4] the Air

Force had decided that it would not exercise the option to extend its contract with K-LAK

when the contract expired on September 30, 2008.  In the memorandum, the Air Force

---

FAR 8.404(a).  In addition, agencies are "encouraged to consider small businesses for [FSS
contract] award, and they receive credit toward their small business goals when placing orders
with small business GSA Schedule contractors."  Sherry et al., supra, at 474-75; see also FAR
8.405-5.

[4]FAR 17.207 provides in relevant part as follows:

(c) The contracting officer may exercise options only after determining that—
   . . .
   (3) The exercise of the option is the most advantageous method of fulfilling
   the Government's need, price and other factors (see paragraphs (d) and (e) of
   this section) considered;
   . . .
(d) The contracting officer, after considering price and other factors, shall make the
determination on the basis of one of the following:
   . . .
   (2) An informal analysis of prices or an examination of the market indicates
   that the option price is better than prices available in the market or that the
   option is the more advantageous offer.
   . . .
(e) The determination of other factors under paragraph (c)(3) of this section—
   (1) Should take into account the Government's need for continuity of
   operations and potential costs of disrupting operations; and
   (2) May consider the effect on small business.

FAR 17.207 (2010) (emphasis added).

4

explained that it had determined that K-LAK was "unable to provide the product at a fair

market price" and thus it would "not be in its best interest" to exercise its option to extend

the contract for a year.[5]  AR 132.  K-LAK sent a letter to the SBA challenging the Air

Force's decision not to procure from a small business.[6]  AR 388; see also AR 392 (August

14, 2008 email regarding same).  The SBA, which had focused on the term "withdrawal"

in the subject line, responded to the Air Force memorandum on August 20, 2008,

requesting more information from the Air Force:

> SBA will consider release of a requirement from the 8(a) program only in very
> limited circumstances.  See 13 C.F.R. § 124.504(e). . . .[7]

---

[5]While the subject line of this memorandum is, "Withdrawal of Unilateral Offering to
Set-Aside under the 8(a) Program," the body of the memorandum makes no mention of
"withdrawal" nor of regulations concerning set-aside withdrawal.  See AR 132.  Rather, the
memorandum put the SBA on notice of the Air Force's decision not to exercise the K-LAK
contract options based on price considerations.  The SBA does not have regulations authorizing
withdrawal of a requirement from the 8(a) program based on a decision to use the FSS.  As
discussed infra in note 12, the SBA rules only address withdrawal when an incumbent 8(a)
contractor no longer fits the 8(a) definitions.

[6]This letter is dated August 4, 2008, but references the Air Force's August 14, 2008 letter
to the SBA.

[7]That regulation provides:

Release for non-8(a) competition.  In limited instances, SBA may decline to accept
the offer of a follow-on or renewal 8(a) acquisition to give a concern previously
awarded the contract that is leaving or has left the 8(a) BD program the opportunity
to compete for the requirement outside the 8(a) BD program.
(1) SBA will consider release only where:
> (i) The procurement awarded through the 8(a) BD program is being
> or was performed by either a Participant whose program term will
> expire prior to contract completion, or, by a former Participant whose
> program term expired within one year of the date of the offering
> letter;
> (ii) The concern requests in writing that SBA decline to accept the

[The Air Force]'s letter indicates that it is withdrawing the above-referenced project from the 8(a) BD program "based on the fact that [K-LAK] is unable to provide the product at a fair market price."  In order that the SBA may properly evaluate all the relevant facts necessary to consider the possible release of this project from the 8(a) BD program, SBA hereby requests, in accordance with 13 C.F.R. § 124.511(b), that [the Air Force] provide to the SBA a written statement detailing the method [the Air Force] used to estimate the current fair market price for the above 8(a) requirement.

AR 130.

The SBA did not take any further action before K-LAK's contract expired on September 30, 2008, and the Air Force, having found that exercise of the option would not have been in the best interest of the government, cancelled its Form 9 Purchase Request internally with the Air Force contracting agency.  Thereafter, the Air Force customer obtained credit reports from the FSS using its Government Purchase Card ("GPC").

The SBA on December 17, 2008 formally advised the Air Force that the SBA did

---

offer prior to SBA's acceptance of the requirement for award as an 8(a) contract; and
(iii) The concern qualifies as a small business for the requirement now offered to the 8(a) BD program.
(2) In considering release, SBA will balance the importance of the requirement to the concern's business development needs against the business development needs of other Participants that are qualified to perform the requirement.  This determination will include consideration of whether rejection of the requirement would seriously reduce the pool of similar types of contracts available for award as 8(a) contracts.  SBA will seek the views of the procuring activity.
(3) If SBA declines to accept the offer and releases the requirement, it will recommend to the procuring activity that the requirement be procured as a small business or, if authorized, [a Small Disadvantaged Business] set-aside.

13 C.F.R. § 124.504(e).

not have the authority to "release this requirement from the 8(a) BD program":

> More specifically, as I [District Director, SBA Delaware District] previously
> have stated, SBA regulations provide that the SBA will consider release of a
> requirement from the 8(a) program only in very limited circumstances. <u>See</u> 13
> C.F.R. § 124.504(e) . . . . [The Air Force] has indicated that it is
> withdrawing–or, more accurately, wishes to withdraw–the above-referenced
> project form the 8(a) BD program "based on the fact that [K-LAK] is unable
> to provide the product at a fair market price."  None of the information you
> have provided meets any of the criteria set forth in 13 C.F.R. § 124.504(e).

AR. 133.  The SBA did not take any further action.  On May 6, 2009, the government

stated in response to a letter from Senator Thomas Carper, "At this time, the Contracting

Agency . . . no longer has a requirement for these services from the customer . . . .  If

there is a future requirement to purchase credit checks via a contract vehicle, the 8(a) BD

program may be utilized, based upon market conditions."  AR 446.

On November 10, 2009, more than one year after the government decided not to

exercise its option to extend the plaintiff's contract and the plaintiff's contract expired,

the plaintiff filed the present complaint, challenging the Air Force's decision to meet its

mission requirements through the FSS.  The complaint contains three claims.  The

plaintiff charges: (1) the Air Force illegally and in defiance of the SBA's December 2008

ruling withdrew the requirement for credit reporting services from the SBA 8(a) program

in violation of 13 C.F.R. § 124.504(e); (2) the Air Force illegally awarded a sole-source

contract to Equifax in violation of FAR 6.2 and 6.3; and (3) the Air Force's fair market

price determination violated 8(a) program regulations set forth in 13 C.F.R. §

124.504(a)(2) because it looked to prices charged by commercial bidders that were not

8(a) eligible bidders.  Compl. ¶¶ 25-38.  The plaintiff asks the court to suspend the Air

Force's acquisition of credit reports from Equifax and to "enjoin the Air Force from

employing the funds obligated to the performance of any contract awarded to Equifax for

the credit reporting services to any entity other than K-LAK."  Compl. 9-10.

In a previous opinion in this case, the court denied the government's motion to

dismiss for lack of subject matter jurisdiction.  The court held that it has jurisdiction to

hear challenges to an agency's decision to procure goods via the FSS.  The court

determined that the plaintiff's claim was properly characterized as a challenge to the FSS

procurement decision than as a challenge to the decision not to exercise the option, which

involves contract administration and was not timely challenged under the Contract

Disputes Act ("CDA"), 28 U.S.C. § 1491(a)(2) (2006).[8]  See K-LAK Corp. v. United

_____

[8]At oral argument on the pending cross-motions, counsel for the plaintiff stated that the
court should exercise jurisdiction to review the market survey as part of an alleged cancellation
of a new 8(a) procurement that was initiated when the Air Force requested price quotes from 8(a)
contractors other than K-LAK in the months preceding the expiration of K-LAK's contract.  See
AR 145-150.  The court rejects this new argument.  The administrative record demonstrates that
the Air Force's research into prices offered by other 8(a) contractors was part of the market
research the agency was required to undertake prior to its decision regarding whether to exercise
the option to extend K-LAK's contract.  See AR 210-16, 320, 352; FAR 17.207.
    As the court has noted, the agency's option exercise decision is not currently before the
court.  The court could have reviewed that decision had the plaintiff timely challenged it pursuant
to this court's CDA jurisdiction, but the court may not review that decision now and not pursuant
to its bid protest jurisdiction.  In addition, the plaintiff's arguments regarding the merits of the
market survey are not supported.  The plaintiff argues that the Air Force erred by considering
products offered by large companies in its market survey performed to determine fair market
price, arguing that the Air Force's analysis should have been restricted to small businesses.  This
contention is contrary to the rules governing price analyses, which authorize consideration of
"commercial prices for similar products," FAR 19.807, including those of larger companies.  See
Techno-Sciences, Inc., B-277260, 97-2 CPD ¶ 115 (Comp. Gen. Sept. 22, 1997).

States, 93 Fed. Cl. 749, 752-55 (2010).  In that decision, the court also held that the

plaintiff possesses standing to challenge the Air Force's decision to use the FSS even

though K-LAK is not on the FSS.  Id. at 755-56.  The court held that K-LAK could

challenge the government's decision to use the FSS rather than continue use of a small

business set-aside because, as a small businesses that would have had a substantial chance

at award if the FSS procurement were found to be not in accordance with law, K-LAK

was an interested party with standing.  Id.  In that decision, the court stated, however, that

if the decision to use the FSS was lawful (and not an abuse of discretion), K-LAK would

not have standing to challenge particular FSS purchases from Equifax because K-LAK is

not a FSS contractor.  Id. at 756 n.7 ("The court notes . . . that to the extent the court

decides that the Air Force's decision to procure credit reports via the FSS rather than

using an 8(a) procurement was justified, K-LAK, a non-FSS contractor, would lack

standing to challenge any particular orders from Equifax or other FSS providers."

(citations omitted)).[9]

The parties have now filed cross-motions for judgment on the administrative

record pursuant to RCFC 52.1.  In essence, the plaintiff argues that the Air Force's

procurement of credit reports from the FSS violates both the rules of the SBA and the

FAR because the Air Force effectively removed the requirement from the 8(a) program

and awarded a follow-on contract to a large business.  In response, the government argues

---

[9]The court also denied the government's motion for reconsideration of that order.  K-LAK Corp. v. United States, No. 09-771 (Fed. Cl. Sept. 28, 2010).

9

that (1) the Air Force's use of the FSS is not the same as withdrawal of the requirement from the 8(a) program; (2) the agency had discretion to decide which procurement method meets its needs; and (3) the agency was not legally obligated to continue procuring credit reports using a small business set-aside when a product on the FSS met its mission requirements at a lower price.

## II. DISCUSSION

### A. Standard of Review

The Federal Circuit has held that "[i]n a bid protest case, an agency's decision to award a contract must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (quoting Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005)). In applying this standard of review to bid protest actions, the Federal Circuit has held that "[t]he court must determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Id. (quoting Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009)). "When a challenge is brought on the first ground, the courts have recognized that contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Thus, a reviewing court must "determine

whether the contracting agency provided a coherent and reasonable explanation of its

exercise of discretion, . . . and the disappointed bidder bears a heavy burden of showing

that the [agency's] decision had no rational basis."  Id. at 1333 (internal quotations

omitted).  To show a violation of a regulation or procedure, "a claimant must show 'a

clear and prejudicial violation of applicable statutes or regulations.'"  Galen Med. Assocs.

v. United States, 369 F.3d 1324, 1331 (Fed. Cir. 2004) (quoting Banknote Corp. of Am.,

Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004)).

### B.     The Government's Decision to Use the FSS to Obtain Credit Reports Was Lawful and Within its Discretion

Much of the plaintiff's argument rests on the validity of the government's

determination that K-LAK and other small businesses were incapable of supplying the

credit reports the Air Force needed at a "fair market price."  K-LAK argues that the Air

Force did not conduct a proper study of market prices under FAR Part 19 (regarding small

business set-asides).  FAR Part 19 provides:

> The contracting officer shall set aside any acquisition over $150,000 for small
> business participation when there is a reasonable expectation that (1) offers
> will be obtained from at least two responsible small business concerns offering
> the products of different small business concerns . . . and (2) award will be
> made at fair market prices.

FAR 19.502-2(b).  This so-called "Rule of Two" requires a contracting officer to make a

determination as to whether at least two small businesses could provide the relevant good

11

or service at a fair market price before proceeding with the procurement process with a larger business.[10]

While the government defends the Air Force's evaluation of fair market price in connection with its decision not to exercise the K-LAK option, it argues that it was not necessary for the Air Force to evaluate price under FAR Part 19 when it decided to use the FSS, because, by law, the price comparison provisions of Part 19 do not apply when an agency decides to meet its mission requirements through the FSS.  In support of this contention, the government points to several FAR provisions, including FAR Part 8, which provides, "Parts 13 . . . 14, 15, and 19 [regarding small business set-asides] (except for the requirement at 19.202-1(e)(1)(iii) [regarding bundling]) do not apply to [blanket purchase agreements ("BPAs")] or orders placed against Federal Supply Schedules contracts . . . ," FAR 8.404(a); FAR Part 38, which states with regard to FSS contracting, "The requirements of parts 5, 6, and 19 apply at the acquisition planning stage prior to issuing the schedule solicitation and do not apply to orders and BPAs placed under resulting schedule contracts (see 8.404)," FAR 38.101(e); and FAR Part 19 on set-asides for small businesses, which states that requirements for setting aside acquisitions do not

───────────

[10]K-LAK has acknowledged that it may not challenge in this action the Air Force's decision not to exercise the contract options under FAR Part 17 because that decision is outside the scope of this court's bid protest jurisdiction.  Rather, this bid protest action is focused on the Air Force's decision to use the FSS for its credit report procurement rather than entering into a contract through a small business set-aside as it had previously.

apply to "purchases from required sources of supply under Part 8 (e.g., . . . Federal Supply Schedule Contracts)," FAR 19.502-1(b).[11]

The court agrees with the government and concludes for the reasons set forth below that because the Air Force decided to use the FSS after K-LAK's contract expired, the Air Force was not required to comply with the Rule of Two or any of the other regulations applicable to small businesses that the plaintiff relies upon in its complaint and subsequent briefing.

The plaintiff has not cited and the court has not found any statutory or regulatory support for the plaintiff's underlying contention that, where the required goods or services are available from the FSS, the FAR or SBA rules mandate that an agency continue to procure the goods or services as a small business set-aide. To the contrary, the court finds that there are no such restrictions applicable when an agency decides to use the FSS to meet agency needs. Therefore, a procuring agency is free to decide whether to use the FSS without regard to whether the requirement has been or could be met through a set-aside or preference program. The language in FAR 8.404(a), FAR 38.101(e), and FAR 19.502-1(b), quoted above, makes it plain that the small business set aside rules relied upon by the plaintiff do not apply to purchases under the FSS.

The Comptroller General has reached this same conclusion in several similar cases, repeatedly denying protests in which small business protesters have argued that an

---

[11]The court notes that FAR Part 8 also provides, "Orders placed under Federal Supply Schedules are exempt from the requirements in Part 6 [regarding general requirements for competition and small business set-asides]." FAR 8.405-6(a).

agency inappropriately failed to follow rules regarding small business set-asides when an

agency decided to meet its requirements via the FSS.  For instance, in <u>Edmond Computer</u>

<u>Co.</u>, B-402863, 2010 CPD ¶ 200 (Comp. Gen. Aug 25, 2010), a small business

challenged an agency's issuance of a BPA against an FSS contract.  The agency had

previously issued a solicitation using service-disabled veteran-owned small business

("SDVOSB") procedures and subsequently cancelled the SDVOSB solicitation in favor

of acquiring the relevant services via the successful vendor's FSS contract.  The

Comptroller General stated:

> The regulations implementing the Small Business Act and [the General
> Service Agency's] FSS Program expressly anticipate and exclude FSS buys
> from set-aside requirements. [citations omitted] In this regard, FAR sect.
> 8.404(a) and sect. 38.101—both of which pertain to FSS contracting—provide
> that FAR part 19, pertaining to small business programs, do not apply to BPAs
> or orders placed against FSS contracts.  Similarly, FAR sect. 19.502-1(b),
> which implements small business requirements, also confirms that set-aside
> provisions do not apply to FSS buys.
> . . .
> Nothing in the Small Business Act suggests or requires that the Rule of Two
> . . . takes precedence over the FSS program.  To the contrary, and as noted
> above, the implementing regulations for the small business set-aside program
> and the FSS program expressly provide that set-aside requirements for the
> program do not apply to FSS buys. [citations omitted] Accordingly, we
> conclude that the Small Business Act and its implementing regulations do not
> impose a requirement on agencies to first evaluate whether a solicitation
> should be set-aside for small businesses before purchasing the goods or
> services through the FSS program.

<u>Edmond Computer</u>, B-402863, 2010 CPD ¶ 200; <u>see also</u> <u>Global Analytic Info. Tech.</u>

<u>Servs., Inc.</u>, B-297200.3, 2006 CPD ¶ 53 (Comp. Gen. Mar. 21, 2006) (denying

protester's argument that "where an agency initially competes a requirement as a small

business set-aside, it should be required to complete the competition on that basis,"

holding that small business procedures do not apply to orders placed against FSS

contracts); Future Solutions, Inc., B-293194, 2004 CPD ¶ 29 (Comp. Gen. Feb. 11, 2004)

(denying protester's argument that agency's purchase from FSS should have been set

aside for small business concerns, holding FAR provision "obviates the need for agencies

to apply small business set-aside procedures where . . . they are purchasing from the

FSS"); Information Ventures, Inc., B-291952, 2003 CPD ¶ 101 (Comp. Gen. May 14,

2003) (same); Sherry et al., supra, at 478 (2008) ("Small Business Program requirements

in FAR Part 19 do not apply to GSA Schedule contract orders.").  The court agrees with

the Comptroller General's reasoning and reading of the relevant FAR provisions in the

above-cited decisions and finds that the plaintiff's situation in this case is not

distinguishable from the protestors' in those GAO cases.

Further, contrary to the plaintiff's contentions, a different result is not compelled

because the agency's request to "withdraw" the requirement from the small business set-

aside program in this case was rejected by the SBA.[12]  FAR 19.506, which governs

_____

[12]As noted, SBA regulations only address situations in which a requirement may be
withdrawn because an incumbent 8(a) contractor no longer fits the 8(a) definitions.  The public
notice regarding a proposed change in SBA rules states, "The 8(a) BD regulations [do] not
specifically address release of requirements other than those where a firm is graduating from the
program and needs the follow-on contract to further its business development."  Small Business
Administration, 74 Fed. Reg. 55694, 55705 (proposed Oct. 28, 2009) (to be codified at 13 C.F.R.
pts. 121, 124).  The proposed rule seeks to clarify the SBA's policy in favor of awarding follow-
on contracts through the 8(a) program and the procedure for obtaining approval for awarding a
follow-on contract outside the program.  Id.

withdrawal and modification of small business set-asides, is not identified as an exception

to the general rule that purchases off of the FSS are exempt from the small business set-

aside procedures in Part 19.  Indeed, the Comptroller General considered just this issue in

Global Analytic, holding, "the FAR exempts task orders issued under FSS contracts from

application of the set-aside withdrawal requirements found in FAR sect. 19.506."  Global

Analytic, B-297200.3, 2006 CPD ¶ 53; see also Millennium Data Sys., Inc., B-292357.2,

2004 CPD ¶ 48 (Comp. Gen. Mar. 12, 2004) ("The-government-wide regulations in the

FAR exempt the issuance of task orders under FSS contracts from the application of FAR

parts 13 and 19, where the requirements of FAR § 19.506 are found. . . . Accordingly . . .

[the agency] was not required to comply with FAR § 19.506." (citations omitted)); Sherry

et al., supra, at 479 ("[A]gencies are not obligated to conduct procurements on a small

business set-aside basis even if the procurement involves the same requirements that have

been awarded in a small business set-aside contract in the past." (citing Global Analytic)).

In view of the foregoing authority, the Air Force was free to decide that it would meet its

requirements through use of the FSS, regardless of the SBA's decision.

 Finally, the court notes that the Air Force's decision to use the FSS for meeting its

credit report requirements was not arbitrary or capricious.  Federal procurement entities

have "broad discretion to determine what particular method of procurement will be in the

best interests of the United States in a particular situation."  Tyler Constr. Grp. v. United

States, 570 F.3d. 1329, 1334 (Fed. Cir. 2009) (holding that the agency had discretion to

use contracting method of its choice unless prohibited by statute or regulation and was not

required to consider whether small businesses could provide the same or similar product

at a fair market price in indefinite delivery/indefinite quantity context).  The record

demonstrates that the credit reports prepared by Equifax and obtained through the FSS are

similar to K-LAK's and were sufficient to meet the Air Force's needs.  The record also

establishes that Equifax's price for the reports is substantially lower than the prices

charged for similar reports by K-LAK and other potential providers.  In such

circumstances, the Air Force's decision to use the FSS was reasonable.  See id.

## III.    CONCLUSION

Accordingly, the plaintiff's motion for judgment on the administrative record and

its motion for injunctive relief must be **DENIED** and the government's motion for

judgment on the administrative record must be **GRANTED**.  The clerk is directed to enter

judgment accordingly.  Each party is to bear its own costs.

**IT IS SO ORDERED**.


                                              s/Nancy B. Firestone
                                              NANCY B. FIRESTONE
                                              Judge